**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Taren Payne, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Campbell Soup Company and Snyder's-Lance Inc.,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Taren Payne ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Campbell Soup Company and Snyder's-Lance Inc., ("Defendants"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1.      Defendants formulate, manufacture, advertise, and sell "Snyder's of Hanover Braided Twists Pretzels" (the "Products")[1] throughout the United States, including in New York. Defendants market their Products in a systematically misleading manner by misrepresenting that their Products are made with "Whole Grain" and that their Honey Wheat Product is also made with "Real Honey."

---

[1] The Products include Defendants' (1) "Honey Wheat"; (2) "Garden Vegetable"; and (3) "Multrigrain" Products.

2.      Because Defendants' sales are driven by health-conscious consumers seeking wholesome flour products, Defendants prominently display on the front label of their Products that they are "MADE WITH WHOLE GRAIN." In addition, Defendants also prominently display that their Honey Wheat Product is "*made with* REAL HONEY." Unbeknownst to consumers, however, Defendants' Products are not predominately made with "whole grain" nor is the Honey Wheat Product primarily sweetened with "real honey." Instead, the Products' ingredients on their back panel list "enriched wheat flour" as the Product's primary ingredient— a well-known substitute to "whole grain" wheat. Similarly, the back panel of Defendants' Honey Wheat Products lists "brown sugar," as the Products' primary ingredient, followed by "tapioca syrup," and "malt extract"—two well-known processed sweeteners.

3.      Defendants' most recent labeling of the Products, along with their respective ingredient panels, are depicted below:

///

///

///

///

///

///

///

///

///

///

///







## Snyder's of Hanover — Braided Twists Honey Wheat

**Nutrition Facts**

12 serving per container

Serving size 1 OZ (28g/ about 7 twists)

Amount per serving

**Calories 110**

| | % Daily Value* |
|---|---|
| **Total Fat** 2g | **3%** |
| Saturated Fat 0g | **0%** |
| Trans Fat 0g | |
| Polyunsaturated Fat 0g | |
| Monounsaturated Fat 1g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 160mg | **7%** |
| **Total Carbohydrate** 22g | **8%** |
| Dietary Fiber 1g | **4%** |
| Total Sugars 4g | |
| Includes 4g Added Sugars | **8%** |
| **Protein** 3g | |

| Vit. D 0.2mcg 2% | • | Calcium | 0mg 0% |
|---|---|---|---|
| Iron 1.2mg 6% | • | Potassium | 50mg 2% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**INGREDIENTS:** ENRICHED WHEAT FLOUR (WHEAT FLOUR, NIACIN, IRON, THIAMIN, RIBOFLAVIN, FOLIC ACID), WHOLE WHEAT FLOUR, BROWN SUGAR, CANOLA OIL, HONEY, MALT (TAPIOCA SYRUP, MALT EXTRACT), POTATO FLOUR, YEAST, SODA.
**CONTAINS: WHEAT**

## Snyder's of Hanover — Braided Twists Garden Vegetable

**Nutrition Facts**

About 12 servings per container

Serving size 1 OZ (28g/ about 7 twists)

Amount per serving

**Calories 110**

| | % Daily Value* |
|---|---|
| **Total Fat** 1.5g | **2%** |
| Saturated Fat 0g | **0%** |
| Trans Fat 0g | |
| Polyunsaturated Fat 0g | |
| Monounsaturated Fat 1g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 190mg | **8%** |
| **Total Carbohydrate** 21g | **8%** |
| Dietary Fiber 2g | **7%** |
| Total Sugars 1g | |
| Includes 1g Added Sugars | **2%** |
| **Protein** 3g | |

| Vitamin D 0mcg | 0% |
|---|---|
| Calcium 0mg | 0% |
| Iron 1.4mg | 8% |
| Potassium 110mg | 2% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), WHOLE WHEAT FLOUR, MALT (TAPIOCA SYRUP, MALT EXTRACT), CANOLA OIL, POTATO FLOUR, SALT, TOMATO POWDER, ONION POWDER, CARROT POWDER, GREEN BELL PEPPER POWDER, WHEAT GLUTEN, BROCCOLI, PARSLEY, YEAST, SODA.
**CONTAINS: WHEAT**

## Snyder's of Hanover — Braided Twists Multigrain

**Nutrition Facts**

About 11 serving per container

Serving size 30g (about 7 twists)

Amount per serving

**Calories 120**

| | % Daily Value* |
|---|---|
| **Total Fat** 2.5g | **3%** |
| Saturated Fat 0g | **0%** |
| Trans Fat 0g | |
| Polyunsaturated Fat 0.5g | |
| Monounsaturated Fat 1.5g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 220mg | **10%** |
| **Total Carbohydrate** 23g | **8%** |
| Dietary Fiber 2g | **7%** |
| Total Sugars 1g | |
| Includes 1g Added Sugars | **2%** |
| **Protein** 3g | |

| Vit. D 0mcg 0% | • | Calcium | 0mg 0% |
|---|---|---|---|
| Iron 1.6mg 8% | • | Potassium | 70mg 2% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), ANCIENT GRAIN FLOUR (SPELT FLOUR, AMARANTH FLOUR, QUINOA FLOUR), MALT (TAPIOCA SYRUP, MALT EXTRACT), CANOLA OIL, WATER, POTATO FLOUR, SALT, CHIA SEEDS, QUINOA, WHEAT GLUTEN, YEAST, SODA.
**CONTAINS: WHEAT**

4.      As a result of their deceptive conduct, Defendants are, and continue to be, unjustly enriched at the expense of their consumers.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendants.

6.      This Court has personal jurisdiction over Defendants because they conduct substantial business within New York, including the sale, marketing, and advertising of the Products. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchases.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District

## PARTIES

8.      Plaintiff Taylor Payne is a citizen of New York, who resides in New York, New York. Plaintiff purchased most of the Defendants' Products (including, but not limited to, Defendants' Honey Wheat Product) for her personal use on various occasions within the applicable statute of limitations, with her most recent purchases taking place on or about May of 2022. Plaintiff Payne made these purchases from various grocery stores located in New York, New York. Prior to making her purchases, Plaintiff Payne saw that the Products were labeled and marketed as being "Made with Whole Grain" and "Made with Real Honey." Plaintiff Payne

relied on Defendants' representations when she decided to purchase the Products over

comparable products that did not make those claims. Plaintiff Payne saw Defendants'

representations prior to and at the time of her purchases and understood them as a representation

and warranty that the Products were predominantly made with a "whole grain" flour and (for the

Honey Wheat Product) that it was primarily sweetened with "real honey." Plaintiff Payne relied

on these representations and warranties in deciding to purchase the Products. Accordingly, those

representations and warranties were part of the basis of her bargains, in that she would not have

purchased the Products on the same terms had she known that those representations were not

true. In making her purchases, Plaintiff Payne paid a substantial price premium due to the false

and misleading "Made with Whole Grain" and "Made with Real Honey" claims. Plaintiff Payne,

however, did not receive the benefit of her bargains because the Products were not, in fact,

exclusively, or at least predominantly, made with "Whole Grain" nor were they exclusively, or at

least predominately, sweetened with "Real Honey."

     9.     Defendant Snyder's-Lance, Inc. ("Snyder's") is a corporation organized under the

laws of North Carolina with its principal place of business located at 13515 Ballantyne Corporate

Place, Charlotte, North Carolina 28277. Snyder's manufacturers, packages, labels, advertises,

markets, distributes and/or sells the Products in New York and throughout the United States.

Snyder's has a direct-store-delivery distribution model that uses independent contractor

distributors throughout the United States, including in New York.[2]

     10.     Defendant Campbell Soup Company ("Campbell") is a New Jersey corporation

with its principal place of business located at 1 Campbell Place, Camden, New Jersey 08103.

Defendant Campbell, through its wholly-owned subsidiary Snyder's, manufacturers, packages,

---

[2] https://www.snyderslanceibo.com (last accessed December 14, 2022).

labels, advertises, markets, distributes and/or sells the Products in New York and throughout the United States. Based on its 2022 Annual SEC filing,[3] Campbell stated that most of its sales increases were attributable to its "power brands" including  "*Snyder's of Hanover* pretzels,"[4] which it reported under its "Snacks" financial portfolio.[5] Campbell also owns and profits from the "Snyder's of Hanover" trademark.[6] Moreover, all of Snyder's officers (including its President,[7] Senior Vice President,[8] Secretary,[9] and Treasurer[10]) identify themselves as officers and/or employees of Campbell's based on Snyder's filing with North Carolina's Secretary of State Business search.[11] Finally, Campbell responded on behalf of Snyder's to Ms. Payne's July 12, 2022 pre-litigation demand letter that was sent to Campbell and Snyder's prior to commencing this action. Based on the foregoing, Snyder's functions as a mere department of Campbell, enjoying neither managerial nor financial autonomy.

11.     At all relevant times herein, Defendants Snyder's and Campbell acted as a single economic enterprise or as authorized agents of each other in formulating, manufacturing, advertising, and/or selling the Products. As such, they are jointly and severally liable for each and every one of the violations alleged herein under both alter ego and agency theories of vicarious liability.

---

[3] Campbell Soup Company., Annual Report (Form 10-K) (Sep. 9, 2022), found at https://www.sec.gov/Archives/edgar/data/16732/000001673222000093/cpb-20220731.htm
[4] *Id.* at 22.
[5] *Id.* at 48.
[6] *Id.* at 4, 31.
[7] https://www.linkedin.com/in/valerie-oswalt/ (last accessed December 14, 2022).
[8] https://www.linkedin.com/in/chad-scherger-7628b94/ (last accessed December 14, 2022).
[9] https://www.linkedin.com/in/charlie-brawley-879a718/(last accessed December 14, 2022).
[10] https://www.linkedin.com/in/atul-garg-2682762/ (last accessed December 14, 2022).
[11] Exhibit A.

## GENERAL ALLEGATIONS

*Defendants' False "Whole Grain" Claims*

12.     "Whole grains" are grains that include the entire grain seed—its endosperm, bran, and germ in the same proportions as when the grain was growing in the fields.[12] Whole grains, including whole grain flour, are healthier than refined grains because they contain key nutrients and vitamins. "Non-whole grains" or "refined grains," on the other hand, have been processed to remove their bran and germ, thereby removing the dietary fiber and most other nutrients.[13] Most refined grains are enriched, a process that adds back some of the previously removed nutrients.[14] Despite this "enrichment" process, however, "enriched flour" still fails to add most of the nutrients found in whole wheat—including its fiber content.[15]

13.     In recent years, consumer demand for whole grain food items has skyrocketed as people have become increasingly health conscious. Recent consumers surveys indicate that consumers readily identify, and seek to purchase, whole grain foods as the second "healthiest" food;[16] and is ranked among the top food choices for consumers seeking to improve their health and energy levels.[17] In fact, fiber—a key component of whole grain foods—is the most sought-out nutrient that consumers look for in food.[18]

14.     Defendants seek to capitalize on these recent trends by conspicuously stating on

---

[12] https://wholegrainscouncil.org/whole-grains-101/whats-whole-grain-refined-grain (last accessed December 14, 2022).
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] International Food Information Council, *2020 Food & Health Survey* (June 10, 2020) at 46-47, https://foodinsight.org/2020-food-and-health-survey
[17] International Food Information Council, *2022 Food & Health Survey* (May 18, 2022) at 41-49, https://foodinsight.org/2022-food-health-survey
[18] International Food Information Council, *2021 Food & Health Survey* (May 19, 2021) at 50, https://foodinsight.org/2021-food-health-survey

the Products' front label that they are "MADE WITH WHOLE GRAIN." Despite this, however, the Products are primarily made with "enriched wheat flour," while "whole wheat flour" is used as a secondary ingredient in a *de minimis* amount—as corroborated by the fact that the Products' Nutrition Facts table indicates that they contain only one or two grams of fiber, depending on the Product.

**Defendants' False "Made with Real Honey" Claims**

15.     "Honey" is one of the oldest sweeteners known to mankind. Honey is derived naturally by "honeybees [that] collect pollen and nectar from the flowering plants that they pollinate and transport it back to the hive…with the help of enzymes provided by the worker bees, the nectar ripens into honey and can be harvested for consumption."[19]

16.     Given its "natural" sweetener profile, honey surpassed sugar as the most used sweetener in the US in 2020.[20] In June of 2022, the United States Department of Agriculture ("USDA") reported that honey consumption in the US reached a new record high of 618 pounds.[21] The USDA explained that, setting aside growth in population, the increase in honey consumption is tied "to consumers' association of honey as a "superfood"— along with garlic, ginger, and turmeric— and perception of honey being a healthy sweetener."[22] This is in line with consumer surveys indicating that nearly 3 in 4 Americans are either attempting to limit or avoid consuming sugar altogether.[23]

---

[19] https://foodinsight.org/what-is-honey/
[20] Honey National Board, Honey Attitude & Usage Study (October 2020) at 19, https://honey.com/images/files/Honey-Attitude-Usage-Study-2020.pdf
U.S. Department of Agriculture, Economic Research Service, *Sugar and Sweeteners Outlook: June 2022,* (June 16, 2022) at 13, https://www.ers.usda.gov/webdocs/outlooks/104129/sss-m-406.pdf?v=3296.2
[22] *Id.*
[23] International Food Information Council, *2022 Food & Health Survey* (May 18, 2022) at 9, https://foodinsight.org/2022-food-health-survey

17.     Among the food industry, bakery goods ranked number two for new honey product introductions in 2021—a 22% increase from 2020.[24] Defendants' intent to capitalize on this trend by introducing the Honey Wheat Product is unmistakable. In fact, an old label rendition of the Honey Wheat Product is mentioned as an example in the 2020 New Products Report from the Honey National Board:[25]



18.     But as previously discussed, although Defendants' Honey Wheat Product purports to be "*made with* REAL HONEY," it is primarily sweetened with "brown sugar," followed by two additional sweeteners: "tapioca syrup" and "malt extract."[26] Defendants' newly added vignettes of a honey dipper only serve to reinforce the deceptive messaging about the Product's

---

[24] Honey National Board, *Honey New Products Introductions* (October 2022) at 26-29 https://honey.com/images/files/Honey-Attitude-Usage-Study-2020.pdf
[25] Honey National Board, *Honey New Products Introductions* (October 2020) at 37, https://honey.com/images/files/Innova-Report-NHB-2020.pdf
[26] https://www.foodbeverageinsider.com/sweeteners/malt-extract-can-do-it-all-clean-label-snacks (last accessed December 22, 2022).

honey content:



19.     The Food, Drug, and Cosmetic Act provides that a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1). The FDA recognizes that product names such as the one at issue here are misleading when they suggest one or more, but not all, of the key ingredients:

> "The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." 21 C.F.R. § 101.18(b)

20.     FDA regulations also require that a food product's name disclose the percentage

of honey when honey is a "characterizing ingredient:"

> "The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case." 21 C.F.R. § 102.5(b).

21.     Based on the FDA's regulatory framework, honey is a "characterizing ingredient" of Defendants' Honey Wheat Product because the proportion of honey in the Products has a material bearing on its price and consumer perception, as explained in greater detail above. Furthermore, honey is also a "characterizing ingredient" of the Honey Wheat Product because the labeling of the Product creates an erroneous impression that honey is present in greater amounts than is actually the case.

22.     Furthermore, although the FDA permits labels to make either "direct or indirect representations with respect to the primary recognizable flavor(s)" under 21 C.F.R. § 101.22(i), here the Honey Wheat Product does not claim to be "*flavored* with honey" or "honey *flavored*." Instead, the Product plainly states that it is "*made with* real honey." Finally, the Honey Wheat Product includes other ingredients, which both separately and combined, impart a greater flavoring characteristic than honey—*i.e.*, brown sugar, tapioca syrup, and malt extract. In fact, the FDA explicitly mentions the use of malt extract "as a flavoring agent and adjuvant as defined in § 170.3(o)(12) of this chapter." 21 C.F.R. § 184.1445. *Compare* 21 C.F.R. § 170.3(o)(12) ("Flavoring agents and adjuvants": Substances *added to impart or help impart a taste* or aroma in food.") *with* 21 C.F.R. § 170.3(o)(11) ("Flavor enhancers": Substances *added to supplement, enhance, or modify* the original taste and/or aroma of a food, *without imparting a characteristic*

*taste or aroma of its own*.") (emphasis added). Although Plaintiff does not seek to enforce the FDA's regulations, Defendants' non-compliance with those standards further illustrates their misconduct.

23.     Defendants' misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendants' deceptive conduct.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Specifically, the Classes are defined as:

**Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendants' Products primarily for personal, family or household purposes, and not for resale.

**New York Subclass:** All persons residing in New York who, during the maximum period of time permitted by the law, purchased Defendants' Products primarily for personal, family or household purposes, and not for resale.

25.     The Classes do not include (1) Defendants, their officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

26.     Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

27.     *Community of Interest*: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a

single action will provide substantial benefits to all parties and to the Court.

28.    ***Numerosity***: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. The precise number of the members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

29.    ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

(b)  Whether Defendants fraudulently induced Plaintiff and the members of the Classes into purchasing the Products;

(c)  Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendants' actions and the amount thereof;

(d)  Whether Plaintiff and the members of the Classes are entitled to statutory damages;

(e)  Whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs.

30.    ***Typicality:*** The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendants' false and

misleading marketing, purchased Defendants' Products, and suffered a loss as a result of those purchases.

31.     *Adequacy*: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because she has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel.

32.     Moreover, the proposed Classes can be maintained because they satisfy both Rule 23(a) and 23(b)(3) because questions of law or fact common to the Classes predominate over any questions effecting only individual members and that a Class Action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a) The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

(b) If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members of the Classes to seek to redress their claims other than through the procedure of a class action; and

(c) Absent a class action, Defendants likely will retain the benefits of their wrongdoing, and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
### Violation of State Consumer Protection Statues[27]
### (On Behalf of Plaintiff and the Nationwide Class)

33.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

34.     The Consumer Protection Statutes of the Nationwide Class members prohibit the use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

35.     By the acts and conduct alleged herein, Defendants engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the packaging of the Products that they are "Made with Whole Grain" and that the Honey Wheat Product is "Made with Real Honey." Despite those representations, however, the Products are primarily made with "enriched wheat flour," while "whole wheat flour" is used as a secondary ingredient in a *de*

---

[27] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.;  Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

*minimis* amount. Similarly, the Honey Wheat Product is primarily sweetened with "brown sugar," "tapioca syrup" and "malt extract"—all of which predominate over the "honey" ingredient.

36.     The foregoing deceptive acts and practices were directed at consumers.

37.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

38.     As a result of Defendants' deceptive practices, Plaintiff and the Nationwide Class members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendants' misrepresentations.

39.     On behalf of herself and the Nationwide Class members, Plaintiff seeks to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT II**
**Violation of New York G.B.L. § 349**
**(On Behalf of Plaintiff and the New York Subclass)**

40.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

41.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

42.     In its sale of Products throughout the state of New York, at all relevant times herein, Defendants conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

43.     Plaintiff and the New York Subclass members are consumers who purchased the Products from Defendants for their personal use.

44.      By the acts and conduct alleged herein, Defendants engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the packaging of the Products that they are "Made with Whole Grain" and that the Honey Wheat Product is "Made with Real Honey." Despite those representations, however, the Products are primarily made with "enriched wheat flour," while "whole wheat flour" is used as a secondary ingredient in a *de minimis* amount. Similarly, the Honey Wheat Product is primarily sweetened with "brown sugar," "tapioca syrup" and "malt extract"—all of which predominate over the "honey" ingredient.

45.      The foregoing deceptive acts and practices were directed at consumers.

46.      The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

47.      As a result of Defendants' deceptive practices, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendants' misrepresentations.

48.      On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

<u>**COUNT III**</u>
**Violation of New York G.B.L. §350**
**(On Behalf of Plaintiff and the New York Subclass**)

49.      Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

50.      New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

51.      Defendants violated New York General Business Law § 350 by representing on

the packaging of the Products that they are "Made with Whole Grain" and that the Honey Wheat

Product is "Made with Real Honey." Despite those representations, however, the Products are

primarily made with "enriched wheat flour," while "whole wheat flour" is used as a secondary

ingredient in a *de minimis* amount. Similarly, the Honey Wheat Product is primarily sweetened

with "brown sugar," "tapioca syrup" and "malt extract"—all of which predominate over the

"honey" ingredient. The foregoing advertising was directed at consumers and was likely to

mislead a reasonable consumer acting reasonably under the circumstances.

52.     Defendants' misrepresentations have resulted in consumer injury or harm to the

public interest.

53.     As a result of Defendants' false advertising, Plaintiff and the New York Subclass

members suffered an economic injury because they would not have purchased (or paid a

premium for) the Products had they known the veracity of Defendants' misrepresentations.

54.     On behalf of herself and the New York Subclass members, Plaintiff seeks to

recover their actual damages or five hundred dollars, whichever is greater, three times actual

damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendants, as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil

Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's

attorneys as Class Counsel to represent the Classes;

(b)     For an order finding in favor of Plaintiff and the Classes on all counts asserted

herein;

(c)      For compensatory, statutory and punitive damages in amounts to be determined

by the Court and/or jury;

(d)      For prejudgment interest on all amounts awarded;

(e)      For an order of restitution and all other forms of equitable monetary relief; and

(f)      For an order awarding Plaintiff and the Classes their reasonable attorneys' fees

and expenses and costs of suit.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable as of right.


Dated February 13, 2023                                  Respectfully submitted,

                                                         **GUCOVSCHI ROZENSHTEYN, PLLC**

                                                         By: <u>/s/ Adrian Gucovschi</u>
                                                                 Adrian Gucovschi, Esq.

                                                         Adrian Gucovschi
                                                         630 Fifth Avenue, Suite 2000
                                                         New York, NY 10111
                                                         Tel: (212) 884-4230
                                                         adrian@gr-firm.com

                                                         *Counsel for Plaintiff and the Classes*

# EXHIBIT A

• File an Annual Report/Amend an Annual Report • Upload a PDF Filing • Order a Document Online • Add Entity to My Email Notification List • View Filings • Print a Pre-Populated Annual Report form • Print an Amended a Annual Report form

## Business Corporation

**Legal Name**
Snyder's-Lance, Inc.
**Prev Legal Name**
Lance Packing Company
**Prev Legal Name**
Lance, Inc.

## Information

**SosId:** 0082853
**Status:** Current-Active ⓘ
**Date Formed:** 12/14/1926
**Citizenship:** Domestic
**Fiscal Month:** July
**Annual Report Due Date:** November 15th
Current **Annual Report Status:**
**Registered Agent:** CT Corporation System

## Addresses

**Mailing**
13515 Ballantyne Corporate Place
Charlotte, NC 28277

**Principal Office**
13515 Ballantyne Corporate Place
Charlotte, NC 28277

**Reg Office**
160 Mine Lake Ct Ste 200
Raleigh, NC 27615

**Reg Mailing**
160 Mine Lake Ct Ste 200
Raleigh, NC 27615

## Officers

**Secretary**
III Charles A.  Brawley
One Campbell Place
Camden  NJ  08103-1799

**Vice President**
Eric  Christel
595 Westport Avenue
Norwalk  CT  06851

**Assistant Secretary**
Marci K.  Donnelly
13515 Ballantyne Corporate Place
Charlotte  NC  28277

**Vice President**
Matthew  Eckard
13515 Ballantyne Corporate Place
Charlotte  NC  28277

**Assistant Vice President**
Christine  Fletcher
13515 Ballantyne Corporate Place
Charlotte  NC  28277

**Treasurer**
Atul  Garg
13515 Ballantyne Corporate Place
Charlotte  NC  28277

**Vice President**
Atul  Garg
13515 Ballantyne Corporate Place
Charlotte  NC  28277

**Assistant Secretary**
Andrew  D  Kupchik
One Campbell Place
Camden  NJ  08103

**Vice President**
David  Lenahan
One Campbell Place
Camden  NJ  08103-1799

**Vice President**
Janda  K  Lukin
One Campbell Place
Camden  NJ  08103

**President**
Valerie J.  Oswalt
13515 Ballantyne Corporate Place
Charlotte  NC  28277

**Vice President**
Stanley  Polomski
One Campbell Place
Camden  NJ  08103-1799

**Senior Vice President**
Chad  Scherger
One Campbell Place
Camden  NJ  08103-1799

**Vice President**
David  Vincoff
13515 Ballantyne Corporate Place
Charlotte  NC  28277

# Stock

**Class:**  Common
**Shares:**  100
**Par Value** 0.01